# SMITH v. JACKSON.

SALE UNDER DEED OF TRUST; RECEIVER OF CREDITOR; INTEREST IN PURCHASE; EFFECT.

An agreement by the receiver of a building association with his attorney and a third person to purchase property at its public sale by the trustee under a deed of trust securing a debt to the association is not such a violation of his duty as to impress a constructive trust in favor of a succeeding receiver upon the profits of a resale by the joint purchasers, where the sale was regularly and fairly conducted, with competitive bidding, and in good faith by the trustee who held the legal title, and the price obtained was not inadequate, considering the conditions, and the interests of the association were not prejudiced by the conduct of the receiver. (Citing *Anderson* v. *White*, 2 App. D. C. 408; *Mutual F. Ins. Co.* v. *Barker*, 17 App D. C. 205; and *Chesapeake Beach R. Co.* v. *Washington, P. & C. R. Co.* 23 App. D. C. 587.)

No. 3194. Submitted March 5, 1919. Decided March 31, 1919.

HEARING on an appeal from a decree in the Supreme Court of the District of Columbia, sustaining exceptions to a special master's report.                    *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the

District sustaining exceptions to a special master's report, and granting appellee, E. Hilton Jackson, receiver of the First Co-Operative Building Association of Georgetown, District of Columbia, judgment as at law against appellants, John Lewis Smith and Edwin L. Wilson. The amount allowed represents the profit on the resale of a parcel of land sold at the request of the former receiver in this cause by the surviving trustee under a deed of trust securing a debt to the First Co-Operative Building Association. Appellant Wilson was the purchaser at the trustee's sale, the understanding being that appellant Smith, an attorney of the former receiver, and the receiver himself, should share in the venture.

On June 6, 1908, stockholders of the First Co-Operative Building Association of Georgetown, District of Columbia, filed a bill for dissolution and the appointment of a receiver. William E. Ambrose was appointed receiver and he duly qualified as such. On June 28, 1915, the resignation of Ambrose as receiver was accepted and the appellee appointed in his stead. There was a reference to a master who, in his report, filed in December of 1915, charged the accounts of the former receiver with the profit upon the resale of the property, from which the sum now in controversy was derived. The receiver then made claim against appellants, and the matter, having been brought to the attention of the court, was referred to another special master, "with reservation, however, of the right of a review by the court of the said special master's report, both as to findings of fact and conclusions of law." Testimony was adduced and hearings had before the special master who, on April 19, 1917, filed a report. His findings of fact, adopted by the court, are in substance as follows: The Building Association was the holder of certain debts due it from borrowing stockholders for money advanced. These debts were secured by deeds of trust upon real estate. It was the duty of Ambrose as receiver to take appropriate action looking to the conservation of the assets of the association. Frederick S. Schwab had borrowed $2,700, secured by a deed of trust dated August 10, 1899, conveying the property in question to Jessie H. Wilson (since deceased) and

Raphael A. Casilear, as trustees. At the request of the receiver, the surviving trustee advertised the property for sale at public auction on Thursday, June 16, 1910. The sale was held on the day named, and Mr. Wilson, one of the appellants, bid $350 (4½ cents per square foot) for the property, and it was knocked down to him, but the property was withdrawn by the trustee upon the ground that the bid was inadequate. The sale, so far as appears, was properly advertised and regular in every respect. As the auctioneer, Ambrose, Smith, and Wilson, were leaving the premises, the auctioneer remarked that any property in the city that could be bought for 10 cents a foot, or under, was cheap property. Thereupon Smith remarked to Wilson that if he, Wilson, wanted to bid again, he, Smith, would be willing to take an interest in the property if Wilson should be the highest bidder, and Ambrose stated that "he would go in too." The special master found that "Wilson was to use his own judgment in bidding on the property at the second sale, both as to bidding at all and as to the amount of his bid; and if he should happen to become the purchaser thereof, the three persons named should be jointly liable for the purchase price and any expenses incident to the purchase of the property; and they should, also, be jointly interested in the property itself." On the next day, that is on June 17, 1910, the trustee again advertised the property for sale at public auction, the sale to be held on Tuesday, June 28, 1910. At the second sale "Wilson, in competition with one or more bidders, finally made a bid of $491 for the property, which was at the rate of 6½ cents per square foot, and the property was knocked down to him at that figure. * * *. It appears that Mr. Wilson made his bid for the property at this second sale in the exercise of his own individual judgment, and without any previous conference with either Messrs. Ambrose or Smith. * * * While Mr. Ambrose and Mr. Smith were both present at the second sale, there is no evidence that Mr. Smith participated therein in any way, either in the conduct of the sale, or in the acceptance of the bid of Mr. Wilson; nor is there any evidence that Mr. Ambrose gave any instructions or directions to the auctioneer or trustee in

regard to the matter; the testimony of the auctioneer being to the effect that the ordinary course at such sales is for him to take the final instructions of the trustee, although, because of the lapse of time, he had no definite recollection as to the matter in this particular case."

After the second sale Smith and Wilson succeeded in interesting real estate agents in the property and, within a few days, obtained a purchaser for $1,400. It developed that there were unpaid taxes upon the property and that there had been a tax sale. The holder of the tax deed agreed to compromise for $550, or $59 more than Wilson's bid. "Wilson agreed to advance his bid to the extent of the additional amount needed to free the property of taxes, etc., in order that good title thereto might be conveyed to Kite, free and clear of taxes, tax deeds, etc." It resulted, therefore, that the Building Association received nothing from the transaction. The special master expressly found that there was no evidence of any improper influence at the sale to prevent competition or to close competitive bidding, or to bring about the sale of the property to Wilson in preference to anyone else. "On the contrary," says the report, "it appears that the sale was fairly conducted; that there was competitive bidding," and that the property finally was knocked down to the highest bidder.

Mr. *Louis Addison Dent* and Mr. *John Lewis Smith,* for the appellants, in their brief cited:

*Abraham* v. *Ordway,* 158 U. S.; *Albright* v. *Mercer,* 15 Pa. Super. Ct.; *Alger* v. *Anderson Circuit Ct.* 92 Fed.; *Allen* v. *Gillette,* 127 U. S.; *Allen* v. *Pullman Palace Car Co.* 139 U. S.; *Allison* v. *Connor,* 36 Mich.; *Alsop* v. *Riker,* 155 U. S.; *Anderson* v. *Butler,* 31 S. C.; *Anderson* v. *White,* 2 App. D. C.; *Angle* v. *Chicago, St. P. M. & O. R. Co.* 151 U. S.; *Am. Caroline* v. *Wells,* 2 Wall.; *Ashurt's Appeal,* 60 Pa.; *Badger* v. *Badger,* 2 Wall.; *Baker* v. *Cummings,* 169 U. S.; *Bank of Metropolis* v. *Guttschlick,* 14 Pet.; *Banque Franco-Egyptienne* v. *Brown,* 34 Fed.; *Barber* v. *Bowen,* 47 Minn.; *Barton* v. *Long,* 45 N. J.

Eq.; *Bay City Bridge Co.* v. *Van Ellen,* 36 Mich.; *Beaubien* v. *Beaubien,* 23 How.; *Bigelow* v. *Fischer,* 102 Cal.; *Blackman* v. *Shelby,* 27 Tenn.; *Blossom* v. *Milwaukee & C. R. Co.* 3 Wall.; *Boesch* v. *Graff,* 133 U. S.; *Boone* v. *Chiles,* 10 Pet.; *Bowman* v. *Wathen,* 1 How.; *Brown* v. *Buena Vista County,* 95 U. S.; *Brown* v. *Lake Superior Iron Co.* 134 U. S.; *Brunner* v. *Finley,* 187 Pa.; *Burke* v. *Smith,* 16 Wall.; *Buzard* v. *Houston,* 119 U. S.; *Carroll* v. *Green,* 92 U. S.; *Carter* v. *Gibson,* 61 Neb.; *Cates* v. *Allen,* 149 U. S.; *Cherokee Nation* v. *Southern Kansas R. Co.* 135 U. S.; *Clarke* v. *White,* 12 Pet.; *Cohen* v. *Gold Creek Min. Co.* 95 Fed.; *Commissioners* v. *Seymour,* 71 Wis.; *Continental L. Ins. Co.* v. *Rhoads,* 119 U. S.; *Cooley* v. *Cooley* (Tenn.), 37 S. W.; *Boone County* v. *Burlington & M. River R. Co.* 139 U. S.; *Crealh* v. *Sims,* 5 How.; *Credit Co.* v. *Arkansas C. R. Co.* 15 Fed.; *Ex parte Crump,* 84 Tenn.; *Crutchfield* v. *Hewitt,* 2 App. D. C.; *Curley* v. *Tomlinson,* 5 Daly; *Curriden* v. *Middleton,* 37 App. D. C.; *Curry* v. *McCauley,* 11 Fed.; 16 Cyc.; 23 Cyc.; 27 Cyc.; 31 Cyc.; 34 Cyc.; 39 Cyc.; *District of Columbia* v. *R. R. Co.* 8 App. D. C.; *Davis* v. *Hawkins,* 163 Pa.; *Day* v. *Woodworth,* 13 How.; *De la Vergne* v. *Everson,* 1 Paige; *Demares* v. *Gilpin,* 15 Colo.; *De Walt* v. *Doran,* 21 D. C.; *Dexter* v. *Harris,* 2 Mason; Dicey's Parties; *Douglass* v. *Blount* (Tex.) 58 L.R.A.; *Dugan* v. *O'Donnell,* 68 Fed.; *Elmendorf* v. *Taylor,* 10 Wheat.; *England* v. *Russell,* 71 Fed.; *Evers* v. *Watson,* 156 U. S.; *Ewing* v. *Parrish,* 148 Mo. App.; *Farnham* v. *Brooks,* 9 Pick.; *Felix* v. *Patrick,* 145 U. S.; *Flanders* v. *Tweed,* 15 Wall.; *Fletcher* v. *Ann Arbor R. Co.* 116 Fed.; *Foster* v. *Mansfield, etc. R. Co.* 146 U. S.; *Fourth St. Nat. Bank* v. *Yardley,* 165 U. S.; *Fowler* v. *Fowler,* 38 App. D. C.; *Gaines* v. *Miller,* 111 U. S.; *George* v. *Ford,* 36 App. D. C.; *German Am. Sem.* v. *Kiefer,* 43 Mich.; *Gifford* v. *N. J. R. & Transp. Co.* 10 N. J. Eq.; *Glenn* v. *Sothorn,* 4 App. D. C.; *Godden* v. *Kimmel,* 99 U. S.; *Goldstein* v. *White,* 16 N. Y. Supp.; *Graffam* v. *Burgess,* 117 U. S.; *Gray* v. *District of Columbia,* 1 App. D. C.; *Gray* v. *Robertson,* 174 Ill.; *Greenwood & A. & W. R. Co.* v. *Strang,* 77 Fed.; *Guarantee Co.* v. *Mechanics Sav. Bank & T. Co.* 80 Fed.; *Haines* v. *Carpenter,*

1 Woods; *Hall* v. *Russell,* 3 Sawy.; *Halstead* v. *Grinnan,* 152 U. S.; *Hammond* v. *Hopkins,* 143 U. S.; *Hardt* v. *Heidweyer,* 152 U. S.; *Harr* v. *Payson,* 157 Ill.; *Hart* v. *Hines,* 10 App. D. C.; *Harwood* v. *C. & C. A. L. R. Co.* 17 Wall.; *Hayden* v. *Thompson,* 71 Fed.; *Hayes* v. *Hall,* 188 Mass.; *Hayes* v. *Huddleson,* 40 App. D. C.; *Hayward* v. *Elliott Nat. Bank,* 96 U. S.; *Hecht* v. *Slaney,* 72 Cal.; *Hendrickson* v. *Hendrickson,* 42 N. J. Eq.; *Hess* v. *Voss,* 52 Ill.; *Hipp* v. *Babin,* 19 How.; *Hitz* v. *Jenks,* 10 App. D. C.; *Hoey* v. *Coleman,* 46 Fed.; *Hollins* v. *Briarfield Coal & I. Co.* 150 U. S.; *Ex parte Hollis,* 59 Cal.; *Holton* v. *Wallace,* 66 Fed.; *Hotel Co.* v. *Electric Light Co.* 17 App. D. C.; *How* v. *Howe & O. B. B. Co.* 154 Fed.; *Hoyt* v. *Latham,* 143 U. S.; *Hubbard* v. *Manhattan Trust Co.* 87 Fed.; *Hunt* v. *Whitehead,* 19 App. D. C.; *Hutchinson* v. *Brown,* 19 D. C.; *Insurance Co.* v. *Barker,* 17 App. D. C.; *James* v. *James,* 55 Ala.; *Jessup* v. *Illinois C. R. Co.* 43 Fed.; *Johnson* v. *Atl. G. & W. I. Tr. Co.* 156 U. S.; *Johnson* v. *Swankes* (Wis.), 107 N. W.; *Johnston* v. *Standard Min. Co.* 148 U. S.; *Jones* v. *Perkins,* 76 Fed.; *Jourolmon* v. *Ewing,* 80 Fed.; *Kieley* v. *McGlynn,* 21 Wall.; *Kilbourn* v. *Sunderland,* 130 U. S.; *Kimberly* v. *Arms,* 129 U. S.; *Kneeland* v. *Am. Loan & T. Co.* 136 U. S.; *Knight* v. *Reese,* 2 Dall.; *Koenigsberger* v. *Richmond Silver Min. Co.* 158 U. S.; 5 L.R.A.(N.S.); 58 L.R.A.; *L. S. & M. S. R. Co.* v. *Prentice,* 147 U. S.; *La Conte* v. *Irwin,* 19 S. C.; *Lakin* v. *Sierra Buttes G. M. Co.* 25 Fed.; *Lammer* v. *Stoddard,* 103 N. Y.; *Lant* v. *Manley,* 71 Fed.; *Leavenworth Co.* v. *Chicago R. I. & P. R. Co.* 134 U. S.; *Leavenworth Co.* v. *Chicago R. I. & P. R. Co.* 18 Fed.; *Lee* v. *Howell,* 69 N. C.; *Levis* v. *Kengla,* 8 App. D. C.; *Lewis* v. *Cocks,* 23 Wall.; *Lewis* v. *Dennison,* 2 App. D. C.; *Lusk's Appeal,* 108 Pa.; *M. K. & T. R. Co.* v. *Elliott,* 184 U. S.; *M. & M. R. Co.* v. *M. & St. P. R. Co.* 6 Wall.; *McClane* v. *Shepherd,* 21 N. J. Eq.; *McGaughey* v. *Brown,* 46 Ark.; *McGowan* v. *Elroy,* 28 App. D. C.; *McKnight* v. *Taylor,* 1 How.; *McMonigle* v. *McGlinn,* 85 Fed.; *McQuiddy* v. *Ware,* 20 Wall.; *McRae* v. *Bowers Dredging Co.* 86 Fed.; *Mallow* v. *Hinde,* 12 Wheat.; *Mansfield* v. *Wallace,* 217 Ill.; *Marcotte* v. *Hartman,* 46 Minn.; *Marmion* v. *McClellan,* 11 App. D. C.;

*Marsh* v. *Whitmore,* 21 Wall.; *Mattingly* v. *Northwestern V. R. Co.* 158 U. S.; *Maxwell* v. *Walsh,* 117 Ga.; *Meath* v. *Phillips Co.* 108 U. S.; *Melms* v. *Pabst Brewing Co.* 93 Wis.; *Merrill* v. *Monticello,* 66 Fed.; *Merryman* v. *Blount* (Ark.) 94 S. W.; *Merton* v. *O'Brien,* 117 Wis.; *Metcalf* v. *Watertown,* 128 U. S.; *Miles* v. *Vivian,* 79 Fed.; *Miller* v. *Knapp,* 39 Fed.; *Milwaukee & St. P. R. Co.* v. *Arms,* 91 U. S.; *Minor* v. *Mechanics Bank,* 1 Pet.; *Moody* v. *Flagg,* 125 Fed.; *Morrell* v. *Trotter,* 15 Phila.; *Mulherin Sons & Co.* v. *Rice & O'Connor,* 106 Ga.; *New York Guaranty & I. Co.* v. *Memphis Water Co.* 107 U. S.; *New York P. & O. R. Co.* v. *New York L. E. & W. R. Co.* 58 Fed.; *Naddo* v. *Bardon,* 47 Fed., 51 Fed.; *Nash* v. *Ingalls,* 101 Fed.; *Nash. & L. R. Corp.* v. *Boston & L. Corp.* 61 Fed.; *New Hampshire Sav. Bank* v. *Richey,* 121 Fed.; *Newman* v. *Newman,* 60 W. Va.; *Norris* v. *Haggin,* 136 U. S.; *Norris* v. *Haggin,* 28 Fed.; *O'Bear Jewelry Co.* v. *Volfer,* 106 Ala.; *Pacific R. Co.* v. *Ketchum,* 101 U. S.; *Parker* v. *Ormsby,* 141 U. S.; *Pearsall* v. *Smith,* 149 U. S.; *Pechstein* v. *Smith,* 14 App. D. C.; *Pelham* v. *Price,* Hemp.; *Penn Mut. L. Asso.* v. *Austin,* 168 U. S.; *Percy* v. *Cockrill,* 53 Fed.; *Pewabic Min. Co.* v. *Mason,* 145 U. S.; *Phœnix Mut. L. Ins. Co.* v. *Bailey,* 13 Wall.; *Philadelphia, W. & B. R. R. Co.* v. *Howard,* 13 How.; *Philp* v. *Nock,* 17 Wall.; *Pipe* v. *Smith,* 5 Colo.; *Planters' Bank* v. *Farm. & M. Bank,* 8 Gill. & J.; *Prescott* v. *Pfeiffer,* 57 Mich.; *Prevost* v. *Gratz,* 6 Wheat.; *Price* v. *Coleman,* 21 Fed.; *Price* v. *Winter,* 15 Fla.; *Quirk* v. *Liebert,* 12 App. D. C.; *Receiver State Bank* v. *First Nat. Bank,* 34 N. J. Eq.; *Redfield* v. *Bartels,* 139 U. S.; *Redfield* v. *Ystalyfera Iron Co.* 110 U. S.; *Reynes* v. *Dumont,* 130 U. S.; *Rhino* v. *Emery,* 65 Fed.; *Richards* v. *Mackall,* 124 U. S.; *Richter* v. *Jerome,* 123 U. S.; *Roberts* v. *Ely,* 113 N. Y. App.; *Root* v. *Woolworth,* 150 U. S.; *Ruby, The,* 38 Fed.; *Rugan* v. *Sabin,* 53 Fed.; Rule 8, § 5; *Russell* v. *Clark,* 7 Cranch.; *Ryan* v. *Williams,* 100 Fed.; *Sallade's Appeal,* 36 Pa.; *Sav. F. & W. R. Co.* v. *Harrigan,* 80 Ga.; *Scheftel* v. *Hays,* 58 Fed.; *Schroeder* v. *Young,* 161 U. S.; *Scott* v. *Armstrong,* 146 U. S.; *Scott* v. *Donald,* 165 U. S.; *Scott* v. *Neely,*

140 U. S.; *Sec. Inv. Co.* v. *Garrett,* 3 App. D. C.; *Sec. Sav. & L. Asso.* v. *Buchanan,* 66 Fed.; *Sessions* v. *Johnson,* 95 U. S.; *Shea* v. *Dublin,* 3 MacArth.; *Sheehy* v. *Eastern Imp. & Mfg. Co.* 44 App. D. C.; *Shields* v. *Barrow,* 18 How.; *Shields* v. *McCandlish,* 73 Fed.; *Sigua Iron Co.* v. *Clark,* 77 Fed.; *Simmons Creek Coal Co.* v. *Doran,* 142 U. S.; *Sis* v. *Boarman,* 11 App. D. C.; *Smith* v. *Olcott,* 19 App. D. C.; *Smith* v. *Rines,* 2 Sumn.; *Smith* v. *Woolfolk,* 115 U. S.; *Southern P. R. Co.* v. *United States,* 200 U. S.; *Speidel* v. *Henrici,* 120 U. S.; *Starkweather* v. *Jenner,* 27 App. D. C.; *Stearns* v. *Page,* 7 How.; *Steinbeck* v. *Bon Homme Min. Co.* 152 Fed.; *Stewart* v. *Sonneborn,* 98 U. S.; *Such* v. *Bank of New York,* 127 Fed.; *Sullivan* v. *Portland & K. R. Co.* 94 U. S.; *Swift* v. *Smith,* 79 Fed.; *Symmes* v. *Union Trust Co.* 60 Fed.; *Talmadge* v. *Russell,* 76 N. Y. Supp.; *Taylor* v. *Holmes,* 14 Fed.; *Taylor* v. *S. & N. A. R. Co.* 13 Fed.; *Teall* v. *Schroeder,* 158 U. S.; *Teall* v. *Slaven,* 40 Fed.; *Thompson* v. *German American Ins. Co.* 77 Fed.; *Townsend* v. *Vanderwerker,* 160 U. S.; *Treat* v. *Jemison,* 20 Wall.; *Trice* v. *Comstock,* 121 Fed.; *Tulloch* v. *Mulvane,* 184 U. S.; *Twin Lick Oil Co.* v. *Marbury,* 91 U. S.; *Tyler* v. *Moses,* 13 App. D. C.; *Tyler* v. *Savage,* 143 U. S.; *United States* v. *Bitter Root Dev. Co.* 200 U. S.; *United States* v. *Leffler,* 11 Pet.; *United States* v. *Nuestra Senora,* 17 Wall.; *United States* v. *Sanborn,* 135 U. S.; *United States* v. *State Nat. Bank,* 96 U. S.; *United States Trust Co.* v. *David,* 36 D. C. App.; *Upton* v. *Tribilcock,* 91 U. S.; *Van Auw* v. *Chicago Toy & F. G. Co.* 70 Fed.; *Vigoreaux* v. *Murphy,* 54 Cal.; *Wagner* v. *Baird,* 7 How.; *Wagner* v. *Swift's I. & S. Works* (Ky.) 26 S. W.; *Walker* v. *Brown,* 58 Fed.; *Walker* v. *Powers,* 104 U. S.; *Ware* v. *Galveston City Co.* 111 U. S.; *Ware* v. *Galveston City,* 146 U. S.; *Warner* v. *Godfrey,* 186 U. S.; *Washington A. & G. R. Co.* v. *Washington* (D. C.) 10 Wall.; *Watson* v. *United States Sugar Refinery,* 68 Fed.; *Watts' Appeal,* 78 Pa.; *Weaver* v. *Leiman,* 52 Md.; *Wetzel* v. *Minnesota R. Transp. Co.* 65 Fed.; *White* v. *Boyce,* 21 Fed.; *Whitehead* v. *Shattuck,* 138 U. S.; *Wilder* v. *New Orleans,* 87 Fed.; *Willard* v. *Wood,* 164 U. S.; *Williams* v. *Jackson,* 107 U. S.; *Wilmerding* v. *Ross,*

33 Conn.; *Wollensak* v. *Reiher,* 115 U. S.; *Wood* v. *Carpenter,* 101 U. S.; *Wood* v. *New York & N. E. R. Co.* 61 Fed.; *Wylie* v. *Coxe,* 15 How.; *Yeoman* v. *Townshend,* 74 Hun; *Youtsey* v. *Hoffman,* 108 Fed.; *Yuster* v. *Keefe* (Ind.), 90 N. E.

*Mr. Robert H. Turner, Mr. W. W. Millan,* and *Mr. R. E. L. Smith,* for the appellee:

### The Question of Jurisdiction.

"If a defendant in a suit in equity answers and submits to the jurisdiction of the court, it is too late for him to object that the plaintiff has a plain and adequate remedy at law. This objection should be taken at the earliest opportunity. The above rule must be taken with the qualification that it is competent for the court to grant the relief sought and that it has jurisdiction of the subject-matter." Daniel, Ch. Pr. 4th Am. ed. p. 555; *Reynes* v. *Dumont,* 130 U. S. 354; *Kilbourn* v. *Sunderland,* 130 U. S. 505; *Brown* v. *Lake Superior Iron Co.* 134 U. S. 530; *Tyler* v. *Savage,* 143 U. S. 79; *Insley* v. *United States,* 150 U. S. 512; *Perigo* v. *Dodge,* 163 U. S. 160; *Southern P. R. Co.* v. *United States,* 200 U. S. 341; *Tyler* v. *Moses,* 13 App. D. C. 428; *United States Trust Co.* v. *Blundon,* 42 App. D. C. 500.

It being established by the foregoing authorities and the undisputed facts that the court was justified in overruling the objection to the jurisdiction because it came too late, nothing can be found in the circumstances of this case requiring the court to refuse to entertain jurisdiction. *St. Louis & S. F. R. Co.* v. *McBride,* 141 U. S. 127; *Western Life Indemnity Co.* v. *Ruff,* 235 U. S. 261; *Pease* v. *Rathbun-Jones Eng. Co.* 243 U. S. 273; *Lawson* v. *Barber & Co.* 189 Fed. 165; *Hawkeye Gold Dredging Co.* v. *State Bank,* 157 Fed. 253; *Insurance Co.* v. *Bank,* 104 U. S. 54; *Union Stock Yard Bank* v. *Gillespie,* 137 U. S. 411.

Even if the objection to the jurisdiction had been seasonably made, it is without merit. *Bay State Gas Co.* v. *Rogers,* 147 Fed. 557.

"The subject-matter, it is true, is only gains and profits arising out of à trust as courts of equity define trusts, express or constructive, and therefore, although it sometimes happens that there is a concurrent remedy at law where a trust has worked itself into cash, yet in the Federal courts, the remedy in equity always remains." *Harrigan* v. *Gilchrist,* 121 Wis. 127; *Johnson* v. *Little,* 141 Ala. 382; *Jackson* v. *Updegraffe,* 1 Rob. (Va.) 120; *Loving* v. *Salisbury Mills,* 125 Mass. 138; *Smith* v. *Dallas Compress Co.* 195 Ala. 534; *Jones* v. *Abraham,* 75 Va. 466; *Woodell* v. *Bruff,* 25 W. Va. 465; *Enslen* v. *Allen,* 160 Ala. 529; *Barksdale* v. *Finney,* 14 Gratt. 338; *Pearce* v. *Dill.* 147 Ind. 136; *Lee* v. *Lee,* 67 Ala. 406.

The Merits of the Case.

The liability of the appellants arises out of the fact that they assisted the former receiver in doing a thing that he could not lawfully do. "A party who concerts or unites with a fiduciary in any act, contrary to the duty of such fiduciary, becomes particeps criminis and will be held liable accordingly." *Woodell* v. *Bruff,* 25 W. Va. 465.

The naked proposition in this case is that a receiver, in the name of another, purchased property for himself when he was having it sold for the real owner, his cestui que trust. His duty as a receiver was to make it bring as much as possible. His interest as a purchaser was to buy it as low as possible.

The law will not allow him to put himself in a position where his duty and his interest conflict. *Hayes* v. *Hall,* 188 Mass. 510; *Enslen* v. *Allen,* 160 Ala. 529; *Johnston* v. *Little,* 141 Ala. 382; *Harrigan* v. *Gilchrist,* 121 Wis. 127.

The Remedy at Law.

In *Curriden* v. *Middleton,* 37 App. D. C. 568, plaintiff sought nothing but a money judgment for damages resulting from having been deceived. It had no relation to the misuse of trust property or funds. *George* v. *Ford,* 36 App. D. C. 315, was to the same purport.

Γ  C ]                    Argument of Counsel.

*Tyler* v. *Moses,* 13 App. D. C. 428, was a case where fraud
had been perpetrated upon the plaintiffs in inducing them to
make certain investments.    It had no relation to a fiduciary of
the court juggling with trust property.    Furthermore, even in
that case, equitable jurisdiction was sustained because the ob-
jection came too late.

*Pechstein* v. *Smith,* 14 App. D. C. 27, is a case where the
plaintiff asked for the cancelation of certain bonds which he
said were null and void, false and forged, and the court said if
they were he could successfully defend against them at law.

### Laches and the Statute of Limitations.

*Lewis* v. *Dennison,* 2 App. D. C. 387, is a case where the
Statute of Limitations was invoked, but the claim was specif-
ically denied with the announcement that fraudulent conceal-
ment of a cause of action avoids the operation of the statute
not only in equity, but at law as well.

*Fowler* v. *Fowler,* 38 App. D. C. 476, is a case where one of
thirteen children filed a bill against his mother as administratrix
of his father's estate thirty years after he became of age, and
where it was doubtful, on the evidence, whether the mother had
been guilty of any fraudulent misrepresentations.    But even
there this court announced the doctrine that mere delay in bring-
ing a suit in equity for discovery and an accounting is not in
itself sufficient to show laches if a satisfactory and convincing
reason for the delay is shown.

*United States Trust Co.* v. *David,* 36 App. D. C. 549, is a
case where the receiver of an insolvent corporation presented to
a trust company a copy of the order of his appointment, bearing
the title and number of the case in which he was appointed.
It was held that this gave the company constructive notice of
the contents of the bill in said cause.

*Levis* v. *Kengla,* 8 App. D. C. 230, is a case where a bill was
filed to set aside a foreclosure fifteen years after it was made.
It was held that the plaintiff had failed to prove an alleged
oral agreement upon which he relied; that if proven it was

within the Statute of Frauds, and, finally, that if he had any rights they were barred by laches, because "for fifteen years, without any adequate explanation, he slept upon his alleged rights."

Mr. Justice ROBB delivered the opinion of the Court:

The learned trial justice was of the view that the duty of Ambrose with respect to the property was such "that his conduct was a palpable violation of his duty;" that the purchase and resale was a joint enterprise, conducted with full knowledge of the surrounding circumstances, and hence that the profits realized were impressed with a constructive trust in favor of the present receiver.

In *Anderson* v. *White,* 2 App. D. C. 408, and *Mutual F. Ins. Co.* v. *Barker,* 17 App. D. C. 205, this court pointed out the difference between the rule applicable to cases of sales by trustees appointed by the court, "such as trusts to sell for partition or distribution and the like," and "sales made under the ordinary trust to secure loans, and enforceable upon stipulated terms and notices." In the former, the interests of the beneficiaries are identical, and the trustee is charged with the absolute duty so as to arrange and conduct the sale as to secure the highest possible price for the property; in the latter, it is the duty of the trustee, upon demand of the security holder after default, to conduct the sale "in the manner and upon the notice prescribed in the trust." The title under these deeds of trust is not in the creditor, but in the trustees, whose duties are set forth in the deed and who really act independently of either party. *Chesapeake Beach R. Co.* v. *Washington, P. & C. R. Co.* 23 App. D. C. 587, 599. Their sole duty is to conduct the sale in accordance with their grant of power, extinguish the debt if possible, and hold any balance for the grantor. While, therefore, a mortgagee or a trustee in a mortgage or deed of trust may not become the purchaser at his own sale, unless permitted by the terms of the in-

strument or authorized by statute, a creditor secured by such mortgage or trust may do so. Not holding the legal title, he is not a trustee for the debtor in such sense as to preclude him from buying at the sale. This was expressly ruled in *Smith* v. *Black,* 115 U. S. 308, 29 L. ed. 398, 6 Sup. Ct. Rep. 50. That case arose in the District of Columbia, and the court said that "the creditor for the satisfaction of whose debt the sale is made has a right to compete fairly at the sale, and may become the purchaser." In *Twin-Lick Oil Co.* v. *Marbury,* 91 U. S. 587, 590, 23 L. ed. 328, 330, 3 Mor. Min. Rep. 688, the court said: "The defendant was not here both seller and buyer. A trustee was interposed who made the sale, and who had the usual powers necessary to see that the sale was fairly conducted, and who in this respect was the trustee of the corporation [the grantor in the deed of trust], and must be supposed to have been selected by it for the exercise of this power." See D. C. Code, § 544 [31 Stat. at L. 1274, chap. 854.]

Coming now to the facts of this case, we are unable to agree with the learned trial justice that the real owner of this property was the association, represented by the receiver. The legal title was in the surviving trustee, the equitable title in the debtor. While it was the duty of the receiver to notify the trustee of the debtor's default and request a sale of the property, his positive duty ended there. Responsibility for the conduct of the sale rested upon the trustee. This must be so, else the creditor secured by the deed of trust, in this instance the Building Association, would not be permitted to bid at the sale, for obviously one may not be both seller and buyer. Although the receiver was chargeable with no further positive duty, nevertheless his acts should receive the close scrutiny of the court. Evidence warranting the inference that the conduct of the receiver, chargeable also to the purchaser, was to the prejudice of the creditor would warrant the setting aside of the sale if the title had not passed to an innocent purchaser. Does the evidence before us warrant such an inference? That the sale was regularly and fairly conducted is conceded. "No fraud in fact is alleged in the bill or shown in the evidence, no effort to keep

bidders away from the sale, or to have a surreptitious sale, no want of the usual notice of sale." *Smith* v. *Black,* 115 U. S. 308, 315, 29 L. ed. 398, 401, 6 Sup. Ct. Rep. 50. On the contrary, this was a second sale, and it affirmatively appears that there was competitive bidding. There is no evidence challenging the good faith or judgment of the trustee. The special master found that the price for which the property sold was not "necessarily inadequate in a legal sense." It is conceded that the price obtained at the resale was a good one. Having in mind conditions that obtained, including the outstanding tax title, we certainly could not find that the price realized at the trustee's sale was so grossly inadequate as to shock the conscience of the court and furnish a basis for the setting aside of the sale. Indeed, we do not understand counsel for the appellee to contend that there is any basis for the setting aside of this sale; but, whether or not we correctly apprehend counsel's position, we are convinced that there is no ground for such a contention. In other words, on the admitted facts we are satisfied that the sale was regularly and fairly conducted and that the conduct of Ambrose in respect of the bid was in no way prejudicial to the creditor, the Building Association. In the absence of any evidence from which we might find that the interests of the association were prejudiced by the conduct of the receiver and appellants, no theory is apparent upon which a judgment against them could be based.

It follows that the decree must be reversed, with costs, and it is so ordered. *Reversed.*

A motion for rehearing was denied April 17, 1919.